## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA

**KENNETH RICHARDS,**
**for himself and all others**
**similarly situated,**

        **Plaintiff,**

**v.**

**WEST VIRGINIA DEPARTMENT OF HEALTH**
**AND HUMAN RESOURCES, and**
**BILL CROUCH, Director of West Virginia**
**Department of Health and Human Resources,**
**in his official capacity,**

        **Defendants.**

**Civil Action No.**  2:19-cv-00397

## CLASS ACTION COMPLAINT UNDER THE AMERICANS WITH DISABILITIES ACT AND THE REHABILITATION ACT OF 1973

### INTRODUCTION

1.    This class action seeks relief against a discriminatory and illegal state-wide policy and practice of the division of West Virginia state government, and its top official, who are charged with administering and implementing most joint federal/state-funded government public benefit programs in this state.

2.    Defendants have employed and continue to employ a state-wide method of administering and operating West Virginia's joint federal/state–funded public benefit programs which does not afford a lawful and meaningful opportunity for class members to seek and obtain reasonable modification of defendants' customary and general policies, practices, or standards through a case-by-case process complying with the requirements of law and the specific circumstances of an individual's unique combination of disabilities and needs.

3.    Plaintiff, on his behalf and on behalf of all other similarly situated applicants for and/or

recipients of benefits under these programs, seeks to require defendants to adopt and implement

new state-wide procedures and standards complying with federal law, to assure disabled

individuals a meaningful, reliable, and lawful opportunity to obtain reasonable accommodations

in defendants' operation of these publicly-funded benefit programs.

## JURISDICTION

4.    This action is brought under Title II of the Americans with Disabilities Act (ADA), 42

U.S.C. § 12133, and under 29 U.S.C. § 794a(2) of the Rehabilitation Act of 1973 (RHA).

5.    The district court has jurisdiction over these claims pursuant to 28 U.S.C. § 1331 and 28

U.S.C. § 1343(a)(3).

6.    Venue is proper in this district because defendants have their principal place of business

in Kanawha County, West Virginia, and the events involving plaintiff occurred in this district.

## PARTIES

7.    Defendant West Virginia Department of Health and Human Resources (DHHR) is a

division and instrumentality of the State of West Virginia.

8.    At all relevant times, DHHR has been the single agency of state government charged

with operation, oversight, and administration of all federal/state public benefit programs funded

under the Social Security Act and/or under the Food and Nutrition Act of 2008.

9.    Those programs include but are not limited to programs operated in West Virginia to

provide Temporary Assistance for Needy Families (TANF), Medicaid, and the Supplemental

Nutrition Assistance Program (SNAP).

10.    As a government agency, DHHR is a "public entity" as defined by 42 U.S.C. § 12131(1)

of Title II of the ADA.

11.     The joint federal/state-funded public benefit programs DHHR operates and administers in West Virginia are each "programs or activities" subject to the requirements and prohibitions of Title II of the ADA and § 794 of the RHA.

12.     Plaintiff is a disabled individual residing in Charleston, Kanawha County, West Virginia.

13.     Plaintiff Kenneth Richards is an unmarried man who has lived in West Virginia all his life.

14.     Plaintiff worked for a cable television company for years until he injured his back in 1999.

15.     During rehabilitation therapy for that injury, plaintiff was sent to an ophthalmologist for examination.

16.     At that time, plaintiff learned that he was afflicted with retinitis pigmentosa, an incurable, progressive eye disease that rapidly destroyed plaintiff's sight.

17.     By 2000, plaintiff was legally blind. He was awarded Social Security Disability benefits in that year as the result of this disability.

18.     At all times since approximately 2000, plaintiff's physical limitations and Social Security status and income have been such that he has satisfied continuously the basic eligibility requirements of income and status as required to receive federal SNAP and Medicaid benefits.

19.     As to those programs, plaintiff is and has at all times been a "qualified individual with a disability" as defined by the ADA, and an "individual with a significant disability" as defined by 29 U.S.C. § 705(20) and (21) of the RHA.

20.     Defendant Bill Crouch is the Secretary of the West Virginia Department of Health and Human Resources (DHHR). In that capacity, Mr. Crouch has full executive authority and

responsibility for the operation, control, and administration of DHHR and the West Virginia programs and activities at issue. Mr. Crouch is sued in his official capacity.

## FACTS

**Requirements of the ADA and RHA**

21.     As to the operation of all of West Virginia's joint federal/state funded programs and activities, including Medicaid and SNAP, the ADA and the RHA have at all times prohibited DHHR directly, or indirectly through contractual, licensing, or other arrangements, from discriminating on the basis of disability.

22.     The ADA and the RHA further prohibit DHHR from utilizing criteria or methods of administration in these joint federal/state funded programs and activities that discriminate or have an effect of discriminating on the basis of disability, directly or indirectly.

23.     Moreover, 28 C.F.R. § 35.130(b)(7)(i), was promulgated under the ADA as a critical component of federal efforts to prevent disparate treatment and disparate impact discrimination in the operation and administration of joint federal/state funded public benefit programs and activities.

24.     This regulation requires a public entity like DHHR to make reasonable modifications in policies, practices, standards, or procedures when modification is necessary to afford disabled individuals meaningful access to program benefits and services despite the unique limitations of individual combinations of disabilities, unless the public entity can demonstrate that making the needed modifications would fundamentally alter the nature of the service, program, or activity.

25.     An individual with a disability is the victim of discrimination in violation of the ADA and the RHA when that person does not receive modification of customary or general policies,

standards, practices, or procedures as needed to afford that individual access to the benefits, opportunities, or advantages of a program or activity equal to that afforded others.

26.     A "reasonable accommodation" is one that gives an otherwise qualified individual with disabilities "meaningful access" to the benefits and opportunities a program or service would offer but for the particular individual circumstances of their disabilities.

**Defendants' Common, Discriminatory and Unlawful Practice**

27.     At all times relevant, defendants have employed and continue to employ a state-wide method of administering and operating  West Virginia's joint federal/state–funded public benefit programs which has the effect of discriminating against plaintiff and other qualified individuals with a disability.

28.     Defendants do not afford a lawful and meaningful opportunity by which disabled applicants and recipients may seek and obtain reasonable modification of defendants' customary and general policies, practices, or standards through procedures and standards complying with law.

29.     As is apparent from responses to Freedom of Information Requests, DHHR's system for satisfying its fundamental legal duty to provide reasonable accommodation to the unique circumstances of otherwise qualified individuals with a disability consists simply of a direction to individual caseworkers requiring them to annotate an individual's file with a "marker" when a request for accommodation is received, and then to make undefined and unspecified "accommodation" for that request.

30.     DHHR provides no significant direction, guidance, supervision, or power to the caseworkers tasked with receiving, evaluating, determining, offering, and implementing requests for accommodation, or to otherwise satisfy DHHR's duty to make an individual, fact-specific

5

determination of the modifications needed to allow that individual meaningful access to program benefits and opportunities in light of the unique, individual limitations of a person's disabilities.

31.     DHHR's state-wide policy thereby unlawfully delegates its non-delegable legal duties to the standardless, unreviewed, unilateral discretion of individual DHHR caseworkers.

32.     Further, DHHR has no policy or procedure for providing or obtaining a continuing, ongoing accommodation needed due to non-temporary circumstances, or for arranging or implementing accommodations which require cooperation or compliance by DHHR systems, departments, or employees other than the caseworker to whom a request is addressed.

33.     Moreover, DHHR has not established or implemented written standards, policies, or procedures for:

- case-by-case evaluation and determination of a need for reasonable accommodation, or the lawful standards applicable thereto;

- the identification by DHHR of an individual's need for reasonable accommodation when that need is or should be obvious;

- providing clear, effective, proper, and timely notice of the right to request a reasonable accommodation, the manner in which a request may be made, the standards and mechanisms by which such requests will be processed and evaluated, or the rights the individual has during the evaluation and determination process;

- providing clear, effective, proper and timely notice of DHHR's determination of a request for reasonable accommodation, and the facts and justifications supporting it, as well as the individual's right to seek review of any determination with which he or she does not agree.

34.     Defendants have failed and refused to make reasonable modification in the procedures, policies, or practices of the programs and activities DHHR administers and operates with federal financial participation for plaintiff and the members of the putative class through a procedure complying with and conforming to the requirements of law.

35.     Consequently, by custom and policy, and pursuant to a pattern of discrimination and deliberate indifference to the rights of plaintiff and the members of the putative class, defendants on the basis of disability have thereby:

- excluded or denied qualified individuals with a disability like plaintiff and those similarly situated from the services, programs, and activities administered and provided by DHHR with federal financial participation;

- denied qualified individuals like plaintiff and those similarly situated the opportunity to participate in or benefit from these services, programs, aid, and activities;

- afforded qualified individuals with a disability like plaintiff and those similarly situated an opportunity to participate in or benefit from the aid, benefit or service that is not equal to that afforded others;

- provided qualified individuals with a disability like plaintiff and those similarly situated with aid, benefits, or services that is not as effective in affording equal opportunity to obtain the same result, gain the same benefit, or reach the same level as others; and

- otherwise limited qualified individuals with a disability like plaintiff and those similarly situated in the enjoyment of rights, privileges, advantages, or opportunities enjoyed by others receiving aid, benefits, or services.

36.     Moreover, by custom and policy, and pursuant to a pattern of discrimination and deliberate indifference to the rights of plaintiff and the members of the putative class, defendants have utilized criteria and methods of administration:

- that have the effect of subjecting qualified individuals with a disability like plaintiff and others similarly situated to discrimination on the basis of disability; and

- that have the purpose or effect of substantially impairing accomplishment of the objectives of the aid, benefits, and services provided with federal financial participation; and

- that otherwise discriminate, in violation of the law and 28 C.F.R. § 130.

**Defendants' Common, State-Wide Practice Has Injured and Continues to Injure Plaintiff**

37.     In or around 2000, with the assistance of visual interpreters, plaintiff applied to DHHR for food stamp and medical benefits.

38.     At that time, DHHR found that plaintiff satisfied the income and status eligibility requirements for receipt of benefits under those federal benefit programs.

39.     Plaintiff has continued to satisfy the basic income and status eligibility requirements for those programs at all times since 2000.

40.     DHHR regularly mails documents, notices, demands for information, demands for documentary verifications, reapplication forms, verification forms, and other writings to plaintiff in connection with its administration of the SNAP and Medicaid benefit programs.

41.     These writings and communications routinely require plaintiff to act, respond, provide information or verifications, and/or complete and return forms within a very few days, on pain of losing the federal benefits.

42.     Plaintiff can just discern light with his right eye. The remaining sight in plaintiff's left eye is barely sufficient that he can read, write, complete, and acknowledge written documents and forms, *if* the documents are presented in a large font format using a *minimum* 20 point font size or larger, *and if* signature lines, check boxes, fill-in blanks, and similar textual provisions are similarly enlarged and bolded extra thick.

43.   # This is an example of minimum 20 point font.

44.     The accommodation plaintiff requires to understand and respond to defendants' written communications is a reasonable one. For instance, the U.S. Department of Agriculture makes available for state use SNAP notices and forms which address many levels of visual disability, including large font formats like that plaintiff requires.

45.     Although DHHR has been aware at all times since plaintiff's application was approved that plaintiff is legally blind and requires a reasonable accommodation in DHHR's customary methods of communication, DHHR has at all times since 2000 insisted on officially communicating with plaintiff by standard form written documents intended for the fully-sighted, communications which his disability prevent him from reading and understanding.

46.     Examples of DHHR's customary written communications to plaintiff are attached as exhibit 1.

47.     These communications are not accessible to plaintiff without a visual interpreter and assistant. Plaintiff cannot read, understand, or complete and respond to them because of his visual disability.

48.     When a visual interpreter first advised plaintiff in 2000 that DHHR had approved his initial application for public benefits, plaintiff telephoned the DHHR worker identified as his caseworker to explain his disability and request that DHHR communicate with him through

means he can access, such as phone communications or notices, forms, and correspondence in an alternate large font format with thick bolded lines which he could read and understand.

49.     Plaintiff's request was made to the caseworker who had communicated to him, in conformity the state-wide policy directing requests for accommodation to individual caseworkers and their discretion.

50.     DHHR never acknowledged plaintiff's request nor did it provide any reasonable accommodation to his needs.

51.     For the first several years of his dealings with DHHR, plaintiff would regularly call the DHHR caseworkers who sent him notices and communications that he could not read, to renew his complaint and request for a reasonable accommodation in how DHHR dealt with him.

52.     Plaintiff has never succeeded in actually speaking about his need for accommodation with any of the many caseworkers who have sent him written communications he cannot read, despite dozens of attempts.

53.     That is because DHHR's phone system customarily sends program recipient phone calls directly to caseworker voicemail. Benefit applicants and recipients are only able to speak personally with a caseworker if the caseworker calls the applicant or recipient.

54.     Over many years, plaintiff left many detailed voicemail messages for the caseworkers who had sent him inaccessible written communication, explaining his disability, explaining the alternate communication format he needs to read and respond to documents sent by DHHR, and asking that steps be taken so that future written communications be sent in a form and format accommodating his disability.

55.     At no time since 2000 has plaintiff ever received a telephone call from DHHR or any of these caseworkers responding to any of his many voicemail requests for accommodation.

56.     At no time did any of these voicemail messages result in any change in the manner or format in which DHHR sends writings to him, or result in modification of any of its written communications to accommodate plaintiff's visual disability.

57.     Plaintiff soon realized that the caseworkers who sent him inaccessible, unreadable writings in accord with DHHR's customary practice and format were different each time something was sent him.

58.     Consequently, a voicemail message left for one caseworker was pointless because a different DHHR employee invariably handled his benefit case and sent him writings in the following month.

59.     In 2018, undersigned counsel for plaintiff requested a complete copy of all documents and records concerning plaintiff's Medicaid and food stamp benefits since the beginning of his eligibility.

60.     These records show that none of plaintiff's many requests for reasonable accommodation were ever documented in DHHR's records. No "marker" was ever documented in his benefit files.

61.     Those records revealed no action that was taken by DHHR at any time to address plaintiff's requests for accommodation or provide plaintiff with written communications accessible to him in light of his disability.

62.     Plaintiff has also pursued other methods of seeking the accommodation to his disability which the law requires DHHR to provide.

63.     For instance, plaintiff spoke with persons in DHHR's IT Department about his disability, explaining that he needed a "marker" added to his file so that notices would come to him in a form and format he could read.

64.     These persons assured him DHHR could provide written communications to him in an accessible format, and that they would modify his DHHR computer files to see to it that this marker was added to his case files.

65.     Plaintiff never had further communication with these persons, and no changes in the way DHHR communicates to him ever occurred.

66.     Plaintiff has also made similar complaints to DHHR's executive staff, and a previous department director's office, again without any success.

67.     In 2017, advocates from Legal Aid of West Virginia (LAWV) received written assurances from DHHR staff that the Department's written communications to plaintiff would henceforth be sent plaintiff in a format that appropriately accommodated his visual disabilities.

68.     That never happened. The very next written communications sent plaintiff constituted notices, forms, and correspondence in the standard DHHR font and format, inaccessible to plaintiff.

69.     The following year, by separate letters dated June 5, 2018, LAWV informed both DHHR generally, and defendant Crouch personally, of plaintiff's continually ignored requests for reasonable modification of DHHR's standard practices and standards to afford him fair and equivalent access to the benefits and opportunities of its public programs, despite the individual limitations imposed by his disability.

70.     These letters requested immediate action by DHHR to assure that DHHR reliably provided plaintiff the reasonable accommodation to which he as entitled.

71.     DHHR has never provided plaintiff a reasonable accommodation to his disability, despite repeated and continuing requests over the years since 2000.

72.     Defendants to this date knowingly continue to fail and refuse to comply with their legal duties under federal law by discriminating against plaintiff and denying him the reasonable accommodation the law requires.

73.     Defendants continue to send plaintiff written communications, demands, notices, and forms plaintiff he cannot read because of his visual disability, in violation of his rights and to his substantial injury.

74.     As a result, plaintiff regularly must obtain the assistance of volunteer visual interpreters to read and interpret for him and assist to him in understanding, responding to, and completing documents which DHHR demands he complete, approve, or comply with for the continuation of his benefits.

75.     Doing so requires plaintiff to forego the personal privacy and confidentiality rights to which he is entitled under state and federal laws; is annoying, frustrating, and demeaning to plaintiff; requires him to beg others for free assistance; makes him feel beholden to others; and undercuts plaintiff's ability and desire to live and conduct his own affairs as independently as he can, some of the types of injuries the legal obligation of reasonable accommodation is intended to prevent.

76.     Moreover, the short time frame attendant to many of DHHR's demands, and plaintiff's need to approach and obtain the assistance of others both to understand DHHR's demands and to respond, has meant that DHHR has repeatedly penalized plaintiff by termination or interruption of his benefits because of the delay necessitated by DHHR's refusal to accommodate his disability.

77.     Over the years, DHHR often temporarily terminated or delayed plaintiff's benefits because he was not able to read and answer DHHR's written communications in the time DHHR required due to DHHR's failure to accommodate his disability.

78.     As an example, in 2018 plaintiff had to pay towards a hepatitis vaccine immunization because his Medicaid card had been delayed due to DHHR's discriminatory refusal to provide him the reasonable accommodation he has long requested.

79.     Plaintiff and the class lack an adequate remedy at law to end ongoing discrimination, defendants' continuing violation of federal law, and infringement of their individual rights.

80.     As a result, on his behalf and on behalf of all others similarly situated, plaintiff seeks class-wide declaratory and injunctive relief against defendants outlawing these discriminatory practices and mandating development and implementation of state-wide procedures for receipt, review, granting, and implementation of reasonable accommodations to the policies, practices, and standards of DHHR public benefit programs through means of an accessible and reliable procedure complying with federal law.

## CLASS ALLEGATIONS

81.     Plaintiff brings this case as a class action pursuant to Rules 23(a), and 23(b)(2) of the Federal Rules of Civil Procedure.

82.     The claims for class-wide declaratory and injunctive relief are asserted on behalf of a class defined to include all qualified individuals with a disability who at any time on or after May 15, 2017 (i) were applicants for or recipients of any public benefit program administered by DHHR with federal financial assistance, (ii) who request or need modification of a DHHR policy, practice, standard, rule, or procedure to prevent discrimination based on disability; and

(iii) were not afforded an individualized, case-by-case evaluation of their need for a modification in a process meeting the standards of federal law; *or* (iv) did not receive the modification they requested or needed.

83.     The class is so numerous that joinder of all members is impracticable. Generally, the numerosity standard is considered satisfied if the class is likely to include more than 25 persons.

84.     According to U.S. Census data posted on defendants' Bureau of Public Health website, 14.4% of all West Virginians under the age of 65 are disabled.

85.     Data published by the federal Centers for Medicare and Medicaid Policy indicate that 538,974 West Virginians were enrolled in West Virginia's Medicaid program in October 2018.

86.     Though the population of Medicaid recipients is characterized by far higher rates of disability than the under 65 population in general, even the overall 14.4% disability rate would indicate that more than 77,600 West Virginian Medicaid recipients likely were disabled in October 2018 alone.

87.     Other Medicaid programs, including the waiver program for disabled seniors which generally has between 5,500 - 6,000 participants each year, substantially increase the number of disabled West Virginians who are applicants or recipients of benefits under the joint federal/state -funded Medicaid program alone.

88.     Similarly, statistics appearing on the USDA Food and Nutrition program website indicate that 316,195 persons received SNAP benefits through defendants in the month of August 2018. Though the population of SNAP recipients is likely to have rates of disability higher than the general under 65 population of West Virginia, even the general population's 14.4% disability rate suggests more than 45,500 West Virginian SNAP recipients were disabled food stamp recipients in August 2018 alone.

15

89.     Given these numbers and the individual differences between the limitations imposed by a disabled applicant's or recipient's unique combination of needs and circumstances, it is reasonable to conclude that the number of disabled persons who may or do require some reasonable accommodation in the rules, practices, requirements, or procedures of just these two public benefit programs totals in the hundreds, if not the thousands.

90.     Each such person is a member of the putative class since defendants currently have no system or procedure which affords anyone an individualized, case-by-case evaluation of their need for a modification through an individualized process meeting the standards of federal law.

91.     Further, the class includes future members who cannot now be identified and individually joined.

92.     Moreover, class members are geographically dispersed throughout the length and breadth of the state, and membership is fluid as qualified individuals with disabilities (i) apply for and leave the various state-wide benefit programs defendants operate with federal financial participation; and/or (ii) experience changes in their individual circumstances or needs due to their disabilities that newly effect their ability to participate in and obtain aid, benefit, and services equal to that afforded others.

93.     There are questions of law or fact common to the class.

94.     Common questions of fact include (i) the precise nature and operation of defendants' state-wide policies and procedures for providing and implementing reasonable accommodations to qualified persons with disabilities when modification of the defendants' policies, practices, or procedures are required to avoid discrimination based on disability, and (ii) the particulars of the methods of state-wide administration by which defendants have violated the law and discriminated against plaintiff and the class in violation of law.

95.    Common questions of law include whether DHHR has thereby violated Title II of the Americans with Disabilities Act and/or Section 504 of the Rehabilitation Act, and/or otherwise illegally discriminated against plaintiffs and the absent class members.

96.    Plaintiff's claims are typical of the claims of the class as a whole. He has been subjected to and suffered injury as the result of the same systemic failure to provide a process for seeking and obtaining reasonable accommodations which complies with federal law, and defendants' pattern and practice of discrimination.

97.    Plaintiff will fairly and adequately represent and advance the interests of the class. By filing this action, the plaintiff has displayed a strong interest in vindicating the rights of all who have been similarly harmed by DHHR's discriminatory and illegal practice. Plaintiff must prevail to obtain the accommodation he requires and end the continuing discrimination to which defendants subject him. By doing so, the named plaintiff will also be advancing and proving the claims and rights of absent class members.

98.    There are no antagonistic interests between plaintiff and the absent members of the class, and the equitable relief sought by the named plaintiff will benefit the class generally.

99.    Furthermore, the plaintiff is represented by Mountain State Justice, Inc., a non-profit, public interest legal services firm with long and substantial expertise in class litigation on behalf of low-income West Virginians. Counsel for the putative class are knowledgeable about federal anti-discrimination laws, and are skilled in conducting civil rights litigation in the federal courts, including the prosecution and management of class action litigation.

100.    Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final equitable relief with respect to the class as a whole.

## COUNT I

101.    Title II of the ADA, 42 U.S.C. § 12132, provides that "no qualified individual with a disability shall, by reason of disability, be excluded from any participation in or be denied the benefits of the servicers, programs, or activities of a public entity, or be subject to discrimination by such entity."

102.    DHHR is a public entity whose operation and administration of benefit programs with federal financial participation is subject to and governed by requirements and prohibitions of Title II of the ADA.

103.    The named plaintiff and the absent members of the class are qualified persons with disabilities protected against discrimination because of their disabilities by the Americans with Disability Act.

104.    In violation of the ADA and 28 C.F.R. § 35.130(b), defendants have committed and are continuing to commit unlawful acts of discrimination, including:

-    Affording qualified individuals with disabilities an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others;

-    providing qualified individuals with disabilities with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others;

-    utilizing criteria or methods of administration:

-    That have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability;

- That have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities. . . .

- failing to make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability;

- imposing or applying eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity.

105. As alleged above, defendants have and continue to violate Title II of the ADA and its implementing regulations pursuant to a pattern and practice of discrimination, inadequate and discriminatory methods of state-wide administration and supervision and a continuing pattern and practice of deliberate indifference and violation of the reasonable accommodation requirement of federal law.

106. Therefore, defendants have discriminated and continue to discriminate against plaintiff and the absent members of the plaintiff class and subclass in violation of 42 U.S.C. § 12132 and other substantive requirements and prohibitions of the ADA and its implementing regulations at 28 C.F.R. § 35.10, to their continuing and irreparable injury in fact.

## COUNT II

107. The public benefit programs DHHR operates in West Virginia with federal financial participation constitute "programs or activities" subject to the requirements and prohibitions of Section 504 of the Rehabilitation Act of 1973. *See* 29 U.S.C. § 794(b).

108. 29 U.S.C. § 794(a) provides in pertinent part that "[n]o otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by

reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . ."

109.    Plaintiff and the members of the plaintiff class are qualified individuals with disabilities entitled to the protections of Section 504.

110.    As alleged above, defendants have and continue to violate the RHA and its implementing regulations pursuant to a pattern and practice of discrimination, inadequate and discriminatory methods of state-wide administration and supervision and a continuing pattern and practice of deliberate indifference and violation of 29 U.S.C. § 794, and its implementing regulations, against plaintiff and the absent members of the plaintiff class and subclass, to their continuing and irreparable injury in fact.

**PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff respectfully requests that this Court:

1.    Certify the class pursuant to Federal Rule of Civil Procedure 23 (b)(2);

2.    Declare defendants in violation of the federal laws as explained above;

3.    Issue without bond a preliminary and permanent injunction to end defendants' illegal discrimination and continuing violations of law;

4.    Require defendants to adopt and implement a state-wide process and procedure by which class members may seek and obtain reasonable modification in the standards, procedures, or requirements of DHHR programs operated with federal financial participation through an individualized process that affords meaningful access to benefits and services equal to that enjoyed by those without that individual's unique combination of disabilities;

4.    Award plaintiff his costs and reasonable attorney fees in accordance with law;

5.      Grant such other and further relief to which plaintiffs or the class or subclass members

may be entitled in law or equity.

**Kenneth Richards, on his behalf and for
all others similarly situated,
Plaintiff.**
By Counsel,


/s/ Gary M. Smith
Gary M. Smith (WV Bar # 12602)
MOUNTAIN STATE JUSTICE, INC.
325 Willey St.
Morgantown, WV  26505
T:  (304) 326-0188
F:  (304) 326-0189
gary@msjlaw.org
Counsel for Plaintiff