IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

**KENNETH RICHARDS,**
for himself and all others
similarly situated,                                    Civil Action No. 2:19-cv-00397

      **Plaintiff,**

v.

**WEST VIRGINIA DEPARTMENT OF HEALTH
AND HUMAN RESOURCES, and
BILL CROUCH, Director of West Virginia
Department of Health and Human Resources,
in his official capacity,**

      **Defendants.**

## JOINT MOTION FOR CLASS CERTIFICATION, PRELIMINARY & FINAL APPROVAL OF CLASS ACTION SETTLEMENT, AND NOTICE TO THE CLASS

COMES NOW Plaintiff Kenneth Richards, on behalf of a class of similarly situated individuals (Plaintiffs), by and through counsel Lydia C. Milnes, Bren J. Pomponio, Gary M. Smith, and the law firm of Mountain State Justice, and Defendants West Virginia Department of Health and Human Resources and Bill Crouch (Defendants), by and through counsel, West Virginia Attorney General Patrick Morrisey, by his Deputy Attorney General, Steven Compton, and jointly move this Court for certification of the putative class, as well as preliminary and final approval of the negotiated settlement of this matter, as set forth in more detail below.

### SUBSTANTIVE BACKGROUND

Defendant West Virginia Department of Health and Human Resources (DHHR) is a division and instrumentality of the State of West Virginia. DHHR is the single agency of state government charged with operation, oversight, and administration in West Virginia of all joint federal/state public benefit programs funded under the Social Security Act, the Medicaid Act,

1

and/or under the Food and Nutrition Act of 2008, which programs include but are not limited to programs operated in West Virginia to provide Temporary Assistance for Needy Families (TANF), Medicaid, and the Supplemental Nutrition Assistance Program (SNAP). These joint federal/state-funded public benefit programs are each "programs or activities" subject to the requirements and prohibitions of § 794 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and its implementing regulation, 45 C.F.R. Part 84 (the RHA or Section 504), and to the mandates and limitations of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., and its implementing regulation, 28 C.F.R. Part 35 (Title II or ADA).

As a government agency, DHHR is a "public entity" as defined by 42 U.S.C. § 12131(1) of Title II of the ADA.  DHHR and Defendant Bill Crouch, in his official capacity as Secretary for DHHR, are required to assure compliance with the ADA and Section 504 in all aspects of the operation and administration of all West Virginia's joint federal/state funded public benefit programs; are prohibited from discriminating against the disabled in the operation or administration of those programs; and further are prohibited from using criteria or methods of administration that have the effect of discriminating on the basis of disability. *See* 45 C.F.R. § 84.4(b)(4); *see also* 42 U.S.C. § 12132; 28 C.F.R. § 35.130(b)(3); 28 C.F.R. pt. 35, App. B (discussing 28 C.F.R. § 35.130(b)(3)).

Pursuant to 28 C.F.R. § 35.130(b)(7)(i), promulgated under the ADA as a critical component of federal efforts to prevent disparate treatment and disparate impact discrimination in the operation and administration of joint federal/state funded public benefit programs, public entities like DHHR are required to make reasonable modifications in policies, practices, standards, or procedures when modification is necessary to afford disabled individuals meaningful access to program benefits and equal opportunities despite the unique limitations of individual combinations of disabilities, unless

the public entity demonstrates affirmatively that making the needed modifications would fundamentally alter the nature of the service, program, or activity. A "reasonable accommodation" is one that gives an otherwise qualified individual with disabilities meaningful access to the benefits and equal opportunities that a program or service would offer but for the particular individual circumstances of that individual's disabilities.

## PROCEDURAL BACKGROUND

On May 15, 2019, Plaintiff Kenneth Richards, a qualified person with a disability under the ADA, filed a class action complaint on behalf of himself and all others similarly situated alleging that Defendants DHHR and Bill Crouch, in his official capacity as Secretary for DHHR, had violated the ADA and Section 504 by employing a state-wide method of administering and operating West Virginia's joint federal/state–funded public benefit programs which did not afford a lawful or meaningful opportunity for people with disabilities who applied for, or received, West Virginia's joint federal/state-funded benefit programs to seek and obtain reasonable accommodations of defendants' policies, practices, procedures, or standards by means of a case-by-case process and addressing the unique circumstances of that individual's specific combination of disabilities and needs. (Dkt. 1.) By that complaint, Plaintiff Richards and the alleged class sought to require defendants to adopt and implement new state-wide procedures and standards complying with federal law, to assure disabled individuals a meaningful, reliable, and lawful opportunity to obtain reasonable accommodation in defendants' operation of West Virginia's publicly funded benefit programs.

While Defendants disputed, and continue to dispute, the allegations of that complaint and deny any non-compliance with the requirements of federal law, the Defendants acknowledged that applicants and recipients of its joint federal/state public benefit programs who have disabilities

3

must be provided opportunities to benefit from or participate in DHHR's programs, services, and activities that are equal to those extended to those without disabilities; and that DHHR is obligated to make reasonable modifications in policies, practices, standards, and procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless DHHR can demonstrate affirmatively that making a modification would fundamentally alter the nature of the service, program, or activity; and that reasonable modifications should be appropriately tailored to the needs of the person with the disability and worked out through a give-and-take process with the affected individual. (*See* 28 C.F.R. § 35.130(b)(7); 45 C.F.R. § 84.4(a), (b)(vii).)

Prior to the filing of the action, the parties had met informally to discuss the allegations and potential for resolution. While no resolution was reached prior to initiation of the suit, the parties continued to engage in informal resolution discussions after filing of the complaint, and during the initial discovery period.

In the fall of 2020, the parties again engaged in extensive negotiations regarding the claims and reached a tentative resolution. On December 29, 2020, the parties jointly requested that the Court extend the deadline for the filing of a motion for class certification and set a final telephonic conference for early January 2021. (Dkt. 28.) In their motion and at that telephonic conference, the parties represented to the Court that all issues had been settled, save two. Specifically, the parties had agreed that DHHR would work with Plaintiff's counsel during 2021 to formulate and adopt new regulations, policies, forms, and procedures that will be applicable to DHHR's Title IV-A or Medicaid funded public benefit programs. The parties had not been able to agree on two final matters, however: (1) the parties contemplated a period during which the Court would retain enforcement jurisdiction after the initial adoption and implementation of those new rules, but had not been able to agree on the length of that period of retained federal jurisdiction to enforce the settlement terms, and (2) the amount of attorney fees to be paid to Plaintiff's counsel. (Dkt. 28.) During the

4

telephonic conference, the Court directed the parties to proceed with the proposed period of collaboration on the development of new policies, forms, and procedures, and reserved the issue of attorney fees for a later date.

Thereafter, throughout 2021, the parties met regularly to develop and implement the policies, forms, and procedures contemplated by the settlement agreement. Among other things, during the course of 2021, DHHR, with input from Plaintiff's counsel, has implemented the following:

- An ADA Standard Operating Procedure setting forth the process by which the DHHR Bureau for Family Assistance[1] (BFA) will comply with the ADA. (*See* SOP #42, attached hereto as Ex. A-1.)

- Amendments to the West Virginia Income Maintenance Manual, Chapter 1, detailing worker responsibilities to ensure fair and equitable treatment of applicants and clients. (*See* excerpt of West Virginia Income Maintenance Manual, Chapter 1, attached hereto as Ex. A-2.)

- Creation and hiring of an ADA/Section 504 Coordinator within BFA, tasked with analyzing and overseeing efforts to provide reasonable accommodations to individuals with disabilities; ensuring compliance with the ADA and Section 504; tracking reasonable accommodation requests and the outcome of such requests and developing reports; overseeing job specific training staff regarding compliance with the ADA and Section 504; providing consultation to local DHHR offices; ensuring appropriate actions are taken to remedy violations of the ADA; and serving as the point of contact for Bureau staff and the community regarding reasonable accommodations. (*See* Job Description, attached as Ex. A-3.)

---

[1] When this lawsuit was initially filed, the Bureau for Children and Family served as the bureau that assisted in the application process of all West Virginia's joint federal/state funded public benefit programs. In August 2021, DHHR split the Bureau for Children and Family into two new bureaus. The Bureau for Family Assistance assumed the responsibilities outlined in this motion.

- A standardized form to be used for any beneficiary or applicant who needs or requests a reasonable accommodation, which tracks the request, the response, and any appeals and subsequent decisions. (*See* DFA-ADARA-1, attached hereto as Ex. A-4.)

- An ADA Procedures document that advises BFA Supervisors of how to manage ADA accommodation requests and provisions of such accommodations. (*See* ADA Procedures, attached as Ex. A-5.)

- Revisions to all BFA application forms to provide notice, as agreed to by the parties, to applicants of their right to request a reasonable accommodation for their disability. (*See, e.g.*, SNAP-1 application, p. 2, attached as Ex. A-6.)

- The creation of an ADA training program for all BFA employees who have direct interaction with the public that has been implemented for existing employees and integrated into the general training program for future employees.

- A "Notice of Rights" document to be mailed to all current and future applicants and recipients of benefits, advising each of their right to a reasonable accommodation under the ADA and Section 504. (*See* "Notice of Rights," attached as Ex. A-7.)

- An ADA notice of decision form providing written notice to individuals seeking a reasonable accommodation of the approval or denial of the requested accommodation and providing information regarding their due process right to a fair hearing. (*See* sample ADA notice of decision form, attached as Ex. A-8.)

## CERTIFICATION OF CLASS

Plaintiff and Defendants jointly move the Court to certify a Rule 26(b)(2) plaintiff class for declaratory and injunctive relief, defined as

> All qualified individuals with a disability who at any time on or after May 15, 2017 (i) were or will be applicants for or recipients of any joint federal/state-funded

public benefit program administered by DHHR, and (ii) who need modification of a DHHR or contractor program, policy, practice, standard, rule, or procedure to have meaningful access to or equal opportunity to obtain or participate in that program's assistance, services, or activities.

Plaintiff and the Defendants stipulate and agree that the number of persons thereby defined are far too numerous for individual joinder. Moreover, it is stipulated that (i) the class includes future members who cannot now be identified and individually joined; (ii) class members are geographically dispersed throughout the length and breadth of the state; and (iii) class membership is fluid and changing as qualified individuals with disabilities apply for and leave the various state-wide benefit programs Defendants operate with federal financial participation. Plaintiff and the Defendants agree these stipulated facts make individual joinder of all members of the plaintiff class impractical.

Plaintiff and the Defendants further stipulate and agree that the circumstances of this matter are factually and legally of a nature which satisfy each of the requirements of Federal Rule of Civil Procedure 23(a)(1), (2), (3) and (4), and that certification of the plaintiff class pursuant to Rule 23(b)(2) for the purposes of declaratory and injunctive relief is peculiarly appropriate.

Plaintiff and Defendants stipulate and agree that Plaintiff's counsel, Mountain State Justice, through attorneys Lydia C. Milnes, Bren J. Pomponio, and Gary M. Smith, have the expertise, knowledge, resources, and independence required to fairly and adequately represent the interests of the plaintiff class, and that Mountain State Justice is qualified to be, and should be, designated as class counsel in this matter pursuant to Rule 23(g).

Finally, Plaintiff and the Defendants stipulate their joint belief that the proposed class settlement, as set forth herein, is fair, reasonable, and adequate to protect the interests of the absent and future members of the plaintiff class.

## PROPOSED CLASS SETTLEMENT TERMS

As resolution of the class claims, the parties have agreed as follows:

(1) DHHR agrees it and its contractors will not discriminate on the basis of disability in the operation or administration of any West Virginia public benefit program, and agrees it and its contractors will not deny any class member meaningful access to or equal opportunity to benefit from or participate in any DHHR public benefit programs, services, or activity because of disability.

(2) DHHR agrees it and its contractors will make reasonable modifications in programs, policies, practices, standards, and procedures when modification is needed to avoid discrimination against an otherwise qualified individual on the basis of disability or to afford meaningful access or equal opportunity to such person despite their disability, *unless* DHHR demonstrates affirmatively for any particular modification that making that modification would fundamentally alter the nature of the service, program, or activity.

(3) DHHR agrees that requests or the identifiable need for reasonable modification are to be evaluated and decided on a case-by-case basis, through an interactive process involving the class member seeking or entitled to accommodation, the goal of which is an individualized, fact-specific determination of the modifications needed to allow that particular individual meaningful access to program benefits and opportunities in light of the unique, individual limitations of that person's disabilities.

(4) Specifically, in addition to the policies, forms, and procedures already developed by DHHR and implemented within the Bureau for Family Assistance, as described above, DHHR will ensure that the Bureau for Medical Services (BMS), which administers the

State's Medicaid programs, enacts and implements and complies with comparable policies, forms, and procedures to those established by the parties for the Bureau for Family Assistance , to include notification to applicants and beneficiaries of their right to a reasonable accommodation, a process for seeking such accommodation, and due process procedures for, if necessary, appealing the denial of an accommodation request.

(5) Further, DHHR agrees to implement and enforce all steps reasonably required, directly and through contractual, licensing, or other arrangements, to assure contractors involved in or performing any aspect of the operation or administration of the state's joint federal/state -funded public benefit programs satisfy and comply with DHHR's undertakings herein and the obligations which Section 504 and the ADA impose in the contractors' dealings with or actions affecting class members.

(6) DHHR will designate at least one department-wide Non-Discrimination coordinator that will, among other duties including ensuring compliance with federal and state non-discrimination laws, ensure compliance with the ADA and Section 504 in all divisions of the DHHR. The Bureau of Family Assistance will continue to employ its own ADA Coordinator in the position that has already been created and filled. The Non-Discrimination Coordinator will not have other responsibilities that will create a conflict of interest or negatively impact their ability to adequately perform their duty to ensure compliance with the ADA and Section 504.  The Department may designate coordinators for other bureaus and divisions as it deems necessary.

(7) DHHR agrees to pay a single, lump sum payment of $50,000.00 in full satisfaction of the class counsel's claim for reasonable attorney fees and costs.

## PROPOSED CLASS NOTICE

The parties have attached a proposed notice to the class as Exhibit B. This form of notice is adequate to provide the class with notice of the settlement and complies with the provisions of Federal Rule of Civil Procedure 23.

Within fourteen days of the Court approving this settlement and proposed notice, Defendant will: (1) post the notice on its website, in conspicuous and easily accessible location(s), as to make the notice visible to all class members who visit the website during the notice period; and (2) post the notice in a conspicuous and easily accessible location in the applicant/recipient waiting rooms of each physical DHHR office.

## LEGAL ANALYSIS

1. **The Court Should Certify the Class**

Rule 23 of the Federal Rules of Civil Procedure, which governs the certification of class actions, provides in relevant part:

> (a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.
>
> (b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if:
>     . . .
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.
>     . . .

Fed. R. Civ. P. 23. Here, the parties propose that the class be certified under Rule 23(b)(2), as the class claims seek solely declaratory and injunctive relief.

Rule 23 is a procedural device allowing a representative party to prosecute his or her own claims together with the claims of non-parties who present similar issues. A proper class action "saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion." *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979). District courts have "wide discretion" in determining whether the requirements of Rule 23 are met. *Ward v. Dixie Nat. Life Ins. Co.*, 595 F.3d 164,179 (4th Cir. 2010).

In considering a motion for class certification, the merits of the underlying action are not at issue; rather the Court simply considers whether the certification prerequisites are satisfied. *See Martin v. State Farm Mut. Auto. Ins. Co.*, 809 F.Supp.2d 496, 501 (S.D.W. Va. 2011); Advisory Committee's 2003 Note on subd. (c)(1) of Fed. Rule Civ. Proc. 23, 28 U.S.C. App., at 144 ("[A]n evaluation of the probable outcome on the merits is not properly part of the certification decision."). The Fourth Circuit directs that Rule 23 be read liberally and applied flexibly to further its remedial purpose. As stated in *Gunnells*:

> [C]ertification as a class action serves important public purposes. In addition to promoting judicial economy and efficiency, class actions also "afford aggrieved persons a remedy if it is not economically feasible to obtain relief through the traditional framework of multiple individual damage actions." 5 James Wm. Moore et al., *Moore's Federal Practice* § 23.02 (3d ed.1999). Thus, federal courts should "give Rule 23 a liberal rather than a restrictive construction, adopting a standard of flexibility in application which will in the particular case 'best serve the ends of justice for the affected parties and . . . promote judicial efficiency.' "

348 F.3d at 424 (citing *In re A.H. Robins, Co., Inc.*, 880 F.2d 709, 740 (4th Cir. 1989)); s*ee also Martin,* 809 F. Supp. 2d at 501. The United States Supreme Court itself has pointed out similarly:

> [Rule 23] states that "[a] class action may be maintained" if two conditions are met: The suit must satisfy the criteria set forth in subdivision (a) (*i.e.,* numerosity, commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories described in subdivision (b). . . *By its terms this creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action.*

*Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 599 U.S. 393, 398 (2010) (emphasis added). This case plainly satisfies the necessary elements of Rule 23(a) and Rule 23(b), and the parties respectfully request that the Court certify the class.

First, as to the elements of Rule 23(a), as stipulated by the parties, the class members are numerous. Where, as here, the only class relief sought is injunctive or declaratory, "even speculative and conclusory representations as to the size of the class suffice as to the requirement of many." *See Pashby v. Cansler*, 279 F.R.D. 347, 354 (E.D.N.C. 2011), *aff'd and remanded for other reasons sub nom.*, *Pashby v. Delia*, 709 F.3d 307 (4th Cir. 2013) (quoting *Doe v. Charleston Area Med. Ctr., Inc.*, 529 F.2d 638, 645 (4th Cir. 1975)). As the parties have stipulated, DHHR serves numerous individuals with disabilities who, like Plaintiff Richards, are in need of a reasonable accommodation in order to benefit from the programs and services provided. Indeed, the nature of the services provided by DHHR is such that it necessarily provides services and benefits to numerous individuals with such disabilities, resulting in an extremely large number of potential class members. As a result, joinder is clearly impractical.

The second element of Rule 26(a) asks whether there are common questions of law or fact applicable to the entire class. Suits "for injunctive relief by their very nature present common questions of law and fact." *Scott v. Clarke*, 61 F. Supp. 3d 569, 585 (W.D. Va. 2014) (quoting *McGlothlin v. Connors*, 142 F.R.D. 626, 633 (W.D. Va. April 2, 1992). Here, there is little doubt relating to commonality, as the issues in the case involve DHHR's uniform policies and procedures for considering and providing reasonable accommodations for individuals with disabilities, which remain the same regardless of the individual's specific needs.

Likewise, Mr. Richard's claims relating to the issues in the case are typical of the class. Under Rule 23(a)(3), the "typicality" requirement for certification exists when "the claims or

defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality looks to whether the class representatives are part of the class as defined and possess the same interest as class members in seeking relief for the same legal injuries. Typicality "does not require precise, mirror-image identity respecting the injuries caused by a single practice or policy," *Kennedy v. Sullivan*, 138 F.R.D. 484, 487 (N.D.W. Va. 1991), but only that the class representative's interests are aligned with those of the class. Here, Mr. Richards' individual claims arise under the same provisions of the ADA and Section 504 as that of the class, and his claims arise under the same course of conduct and same legal theories as the claims of the class.

Finally, as stipulated to by the parties, Mr. Richards has proven himself to be an appropriate class representative, who will fairly and adequately protect the interests of the class. Mr. Richards has attended numerous meetings between the parties and has provided input and insight to his counsel relating to the claims. For these reasons, the parties submit that the requirements of Rule 23(a) are met.

### 2. The Court Should Appoint Class Counsel

Pursuant to Rule 23(g), the parties request that the Court appoint attorneys Lydia C. Milnes, Bren J. Pomponio, Gary M. Smith, and the law firm of Mountain State Justice to serve as class counsel. Said attorneys are qualified to assume the duties of class counsel, and have, in fact, dedicated significant time and energy to negotiating a reasonable class settlement in this matter. All three attorneys have been appointed class counsel in numerous other class actions, including other Rule 23(b)(2) cases certified by this Court. *See, e.g.*, *G.T., et al., v. Board of Education of the County of Kanawha*, 2021 WL 3744607, 2:20cv00057 (Aug. 24, 2021) (appointing Milnes as class counsel, among others); *Baxley, et al., v. Jividen*, 338 F.R.D. 80 (S.D.W. Va. December 21,

2020) (Milnes and Pomponio as class counsel); *Michael T., et al, v. Bowling*, 2:15cv09655 (S.D.W. Va. Sept. 30, 2016) (appointing Pomponio, Smith, & Milnes as class counsel); *Benjamin H., et al., v. Ohl*, 3:99cv338 (S.D.W. Va. October 8, 1999) (Pomponio, among others, as class counsel). The parties respectfully submit that said class counsel have and will fairly and adequately represent the interest of the class.

### 3. The Court Should Preliminarily Approve the Stipulated Settlement

Approval of a class action settlement is within the district court's sound discretion. *Berry v. Schulman*, 807 F.3d 600, 614 (4th Cir. 2015). Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure:

> The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for the purposes of judgment on the proposal.

Fed. R. Civ. P. 23(e)(1). Here, the parties seek to have the class certified and proposed settlement confirmed. Rule 23(e)(2) provides procedural protections for class members "[i]f the proposal would bind class members." In such an instance, the court must conduct a hearing and may only approve the settlement "on finding that it is fair, reasonable, and adequate." *Id.* The Rule goes on to list several factors to consider. *Id.* Arguably, here, notice and a fairness hearing are not necessary, because class members will not be bound by the results of this settlement for purposes of individual damages claims. Nonetheless, in an abundance of caution and to permit the class members an opportunity to be heard, the parties propose that the settlement be approved after notice to the class and a fairness hearing.

Accordingly, at the preliminary approval stage, the Court first considers whether the agreement is likely to satisfy the standards of Rule 23(e)(2), and if so, directs notice to class members. Fed. R. Civ. P. 23(e)(1). Thereafter, at a fairness hearing, the Court will consider final

14

approval of the settlement, in light of any objections received from class members. Fed. R. Civ. P. 23(e)(2), (e)(5). "[A]t the at the preliminary approval stage, the Court need only find that the settlement is within 'the range of possible approval.'" *Commissioners of Pub. Works of City of Charleston v. Costco Wholesale Corp.*, 340 F.R.D. 242, 249 (D.S.C. 2021) (citing cases).

Here, preliminary approval is appropriate because each of the Rule 23(e)(2) factors has been met: (1) the class representative, Mr. Richardson, and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided is adequate; and (4) the proposal treats class members equitably relative to one another. As to the factors listed for adequacy: by reaching an early settlement, Plaintiff was able to obtain an enforceable agreement that ensures notice to current and future class members of their right to a reasonable accommodation under the ADA, an opportunity to request such accommodation, and procedures to ensure fairness in the decision to provide the accommodation. Defendants have further undertaken to train their staff on the provision of such accommodations, as well as implementing a new ADA coordinator position, to oversee the accommodation process within the Bureau for Family Assistance, and to ensure compliance with the ADA and Section 504. Rather than spend months, if not years, litigating the issues, and risk losing the matter in an eventual trial, or potentially waiting years during subsequent appeals, the class settlement agreement enables class members to benefit from immediate changes, through the implementation of policies, forms, and procedures, as well as training of staff, to ensure reasonable accommodations are being provided. The modest award of attorney fees is also appropriate and reflects just a portion of the fees and costs incurred to date, as set forth in the motion for attorney fees. *See* Fed. R. Civ. P. 23(e)(2).

Similarly, the factors used by the Fourth Circuit in relation to approving class settlements are met.[2] *See Commissioners of Pub. Works of City of Charleston v. Costco Wholesale Corp.*, 340 F.R.D. 242, 249 (D.S.C. 2021). Settlement negotiations occurred over the course of years and were finalized following a period of numerous, regularly meetings between the parties to collaborate on the implementation of the new forms, policies, and procedures; and Plaintiffs' counsel has significant class action and civil rights litigation experience, which enables them to consider the risks and benefits of settlement realistically and advocate appropriately for the class. *See id.,* citing *In re Jiffy Lube Secs. Litig.*, 927 F.2d 155, 158–59 (4th Cir. 1991).

In short, given the relief achieved and the risks and costs involved in further litigation, the proposed settlement represents fundamentally "fair, reasonable and adequate" resolution of the disputed issues and should be preliminarily approved. *See* Fed. R. Civ. Pro. 23(e)(2).

### 4. The Court Should Approve the Class Notice.

As set forth above, to the extent that Rule 23(e) requires notice to the class in this matter before the Court grants final approval to any compromise of the case, the parties have agreed to the form and content of a notice to the class, which is attached hereto as Exhibit B, and which provides reasonable and understandable notice of the terms of the settlement. The means of disseminating the notice will allow an adequate opportunity for the class to review and comment on the settlement or seek further information. The parties respectfully request that the Court approve the notice and order its dissemination to the class members as set forth *supra*.

---

[2] The commentary to the 2018 amendments to the Rule 23(e)(2) of the Federal Rules of Civil Procedure states that the amendment was intended to consolidate the various factors established by the circuit courts. However, the Fourth Circuit has not yet addressed these factors in relation to certification of a Rule 23(b)(2) class.

16

**5. The Court Should Approve the Proposed Schedule Below.**

The parties propose the following general schedule to provide for notice, comment, and final approval of the settlement.

First, the parties propose to post the notice on DHHR's website within fourteen days from the date on which a preliminary approval order and order approving the notice issues. Second, the parties request an eight-week period following distribution of the notice, during which class members may file comments and objections. Third, the parties request four weeks from the end of the comment period for the parties to respond to any objections. Fourth, the parties request that the fairness hearing be set within four weeks after the deadline for responding to objections, at a date that is convenient to the Court and counsel of record.

## CONCLUSION

For the reasons discussed above, Plaintiffs and Defendants request that the Court certify the class, appoint class counsel, issue preliminary approval of the settlement agreement, approve the form of the proposed notice and order its publication to the class, and issue the proposed scheduling order. The parties further request final approval of the settlement, the motion for attorney fees, and entry of the additional findings herein following the fairness hearing.

    **Respectfully submitted,**

    **KENNETH RICHARDS, et al., on behalf of himself and all others similarly situated,**
    **By Counsel:**

    */s/ Lydia C. Milnes*
    Lydia C. Milnes (State Bar No. 10598)
    Bren J. Pomponio (State Bar No. 7774)
    Gary M. Smith (State Bar No. 12602)
    Mountain State Justice, Inc.
    1029 University Ave., Suite 101
    Morgantown, WV 26505
    Phone: (304) 326-0188

Facsimile: (304) 326-0189
lydia@msjlaw.org


**DEPARTMENT OF HEALTH AND HUMAN RESOURCES AND SECRETARY BILL CROUCH,**
**By Counsel:**

*/s/ Steven Compton*
Steven Compton (WVSB #6562)
Deputy Attorney General
812 Quarrier Street, 6th Floor
Charleston, WV 25301
Phone: (304) 558-2131
Facsimile: (304) 558-4509
Steven.r.compton@wvago.gov

18