**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**

**KENNETH RICHARDS,**
**for himself and all others**
**similarly situated,**

                                                    **Civil Action No. 2:19-cv-00397**

       **Plaintiff,**

**v.**

**WEST VIRGINIA DEPARTMENT OF HEALTH**
**AND HUMAN RESOURCES, and**
**JEFFREY COBEN, Acting Secretary of West Virginia**
**Department of Health and Human Resources,**
**in his official capacity,**

       **Defendants.**

## ORDER APPROVING CLASS ACTION SETTLEMENT AND ATTORNEY FEES

Before the Court are two joint motions filed by counsel: one seeking approval of the class action settlement and one seeking approval of attorney fees. (Dkt. Nos. 47 & 48.) Having reviewed these documents, held a fairness hearing, and taken the matter under submission, the Court **GRANTS** the Joint Motion for Final Approval of Class Action Settlement and **GRANTS** the Joint Motion for Approval of Attorney Fees.

### I.     BACKGROUND

#### A.  Procedural History

On May 15, 2019, Plaintiff Kenneth Richards, a qualified person with a disability under the ADA, filed a class action complaint on behalf of himself and all others similarly situated alleging that Defendants DHHR and Bill Crouch, in his official capacity as Secretary for DHHR, had violated the ADA and Section 504 by employing a state-wide method of administering and operating West Virginia's joint federal/state–funded public benefit programs which did not afford a lawful or meaningful opportunity for people with disabilities who applied for, or received, West

Virginia's joint federal/state-funded benefit programs to seek and obtain reasonable accommodations of defendants' policies, practices, procedures, or standards by means of a case-by-case process and addressing the unique circumstances of that individual's specific combination of disabilities and needs. (Dkt. 1.) By that complaint, Plaintiff Richards and the alleged class sought to require defendants to adopt and implement new state-wide procedures and standards complying with federal law, to assure disabled individuals a meaningful, reliable, and lawful opportunity to obtain reasonable accommodation in defendants' operation of West Virginia's publicly funded benefit programs.

While Defendants disputed, and continue to dispute, the allegations of that complaint and deny any non-compliance with the requirements of federal law, the Defendants acknowledged that applicants and recipients of its joint federal/state public benefit programs who have disabilities must be provided opportunities to benefit from or participate in DHHR's programs, services, and activities that are equal to those extended to those without disabilities; and that DHHR is obligated to make reasonable modifications in policies, practices, standards, and procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless DHHR can demonstrate affirmatively that making a modification would fundamentally alter the nature of the service, program, or activity; and that reasonable modifications should be appropriately tailored to the needs of the person with the disability and worked out through a give-and-take process with the affected individual. (*See* 28 C.F.R. § 35.130(b)(7); 45 C.F.R. § 84.4(a), (b)(vii).)

Prior to the filing of the action, the parties had met informally to discuss the allegations and potential for resolution. While no resolution was reached prior to initiation of the suit, the parties continued to engage in informal resolution discussions after filing of the complaint, and during the initial discovery period.

In the fall of 2020, the parties again engaged in extensive negotiations regarding the claims and reached a tentative resolution. On December 29, 2020, the parties jointly requested that the Court extend the deadline for the filing of a motion for class certification and set a final telephonic conference for early January 2021. (Dkt. 28.) In their motion and at that telephonic conference, the parties represented to the Court that all issues had been settled, save two.  Specifically, the parties had agreed that DHHR would work with Plaintiff's counsel during 2021 to formulate and adopt new regulations, policies, forms, and procedures that will be applicable to DHHR's Title IV-A or Medicaid funded public benefit programs. The parties had not been able to agree on two final matters, however: (1) the parties contemplated a period during which the Court would retain enforcement jurisdiction after the initial adoption and implementation of those new rules, but had not been able to agree on the length of that period of retained federal jurisdiction to enforce the settlement terms, and (2) the amount of attorney fees to be paid to Plaintiff's counsel. (Dkt. 28.) During the telephonic conference, the Court directed the parties to proceed with the proposed period of collaboration on the development of new policies, forms, and procedures, and reserved the issue of attorney fees for a later date.

Thereafter, throughout 2021, the parties met regularly to develop and implement the policies, forms, and procedures contemplated by the settlement agreement. By the summer of 2022, DHHR had implemented numerous changes to policies and procedures, with substantial input from counsel for the Plaintiffs, and all outstanding issues between the parties had been resolved.

On July 26, 2022, the parties jointly moved to certify the class, for preliminary approval of this settlement, and to approve notice to class. (Dkt. No. 47.) On the same date, the parties further jointly filed a motion to approve attorney fees and costs, in conjunction with the class settlement.

3

(Dkt. No. 48.) On October 6, 2022, this Court granted the motion to certify the class, and directed that notice of the proposed class settlement be published to the class for comment on or before November 25, 2022, and that a fairness hearing be conducted on January 3, 2023.

### B. The Settlement Agreement

The terms of the settlement along with exhibits containing the numerous, newly created policies, procedures, and forms, were previously filed with this Court. (*See* Dkt. No. 47 and exhibits.) The settlement terms, most of which have already been implemented by DHHR, are briefly summarized below:

- An ADA Standard Operating Procedure setting forth the process by which the DHHR Bureau for Family Assistance[1] (BFA) will comply with the ADA. (*See* SOP #42, attached to Dkt. 47 as Ex. A-1.)

- Amendments to the West Virginia Income Maintenance Manual, Chapter 1, detailing worker responsibilities to ensure fair and equitable treatment of applicants and clients. (*See* excerpt of West Virginia Income Maintenance Manual, Chapter 1, attached to Dkt. 47 as Ex. A-2.)

- Creation and hiring of an ADA/Section 504 Coordinator within BFA, tasked with analyzing and overseeing efforts to provide reasonable accommodations to individuals with disabilities; ensuring compliance with the ADA and Section 504; tracking reasonable accommodation requests and the outcome of such requests and developing reports; overseeing job specific training staff regarding compliance with the ADA and Section 504; providing consultation to local DHHR offices; ensuring appropriate actions are taken to remedy violations of the ADA;

---

[1] When this lawsuit was initially filed, the Bureau for Children and Family served as the bureau that assisted in the application process of all West Virginia's joint federal/state funded public benefit programs. In August 2021, DHHR split the Bureau for Children and Family into two new bureaus. The Bureau for Family Assistance assumed the responsibilities outlined in this motion.

and serving as the point of contact for Bureau staff and the community regarding reasonable accommodations.  (*See* Job Description, attached to Dkt. 47 as Ex. A-3.)

- A standardized form to be used for any beneficiary or applicant who needs or requests a reasonable accommodation, which tracks the request, the response, and any appeals and subsequent decisions. (*See* DFA-ADARA-1, attached to Dkt. 47 as Ex. A-4);

- An ADA Procedures document that advises BFA Supervisors of how to manage ADA accommodation requests and provisions of such accommodations. (*See* ADA Procedures, attached to Dkt. 47 as Ex. A-5.)

- Revisions to all BFA application forms to provide notice, as agreed to by the parties, to applicants of their right to request a reasonable accommodation for their disability. (*See, e.g.*, SNAP-1 application, p. 2, attached to Dkt. 47 as Ex. A-6.)

- The creation of an ADA training program for all BFA employees who have direct interaction with the public that has been implemented for existing employees and integrated into the general training program for future employees.

- A "Notice of Rights" document to be mailed to all current and future applicants and recipients of benefits, advising each of their right to a reasonable accommodation under the ADA and Section 504. (*See* "Notice of Rights," attached to Dkt. 47 as Ex. A-7.)

- An ADA notice of decision form providing written notice to individuals seeking a reasonable accommodation of the approval or denial of the requested accommodation, and providing information regarding their due process right to a fair hearing. (*See* sample ADA notice of decision form, attached to Dkt. 47 as Ex. A-8.)

- Payment of reasonable costs and attorney fees to Plaintiffs' counsel, in the agreed-to amount of $50,000.

### C. Notice and Class Response

On October 6, 2022, this Court ordered that class notice be published to the class within fourteen days of the order. (Dkt. No. 50.)  During the notice period, which ran until November 25, 2022, neither the Court nor counsel for either party received any comment or objection from any class member.  On December 22, 2022, the parties jointly filed a notice with the Court, advising that no class member responses to the proposed settlement had been received. (Dkt. No. 51.)

## II.  FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT

### A. Legal Standard

Before approving a class action settlement, the Court must, under Rule 23 of the Federal Rules of Civil Procedure, determine whether that settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Fourth Circuit requires consideration of both the fairness and adequacy of a settlement. *Scardelletti v. Debarr*, 43 App'x 525, 528 (4th Cir. 2002). The Court should further "be satisfied that the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, and falls within the range of possible approval." *Adkins v. Midland Credit Management, Inc.*, 2022 WL 327739 1, 2 (S.D.W. Va. 2022) (citations omitted).

A class action settlement is fair when it "was reached as a result of good-faith bargaining at arm's length, without collusion." *In re Jiffy Lube Securities Litigation*, 927 F.2d 155, 159 (4th Cir. 1992). The Fourth Circuit has also held that "a reasonable judgment on the possible merits of the case is best achieved when all discovery has been completed and the case is ready for trial." *Id.* In considering the fairness of a proposed settlement, the Court must analyze:

> (1) the posture of the case at the time the settlement is proposed; (2) extent of discovery that has been conducted; (3) circumstances surrounding the negotiations; and (4) experience of counsel in the relevant area of class action litigation.

*Adkins*, 2022 WL 327739 at 2; *see also In re Jiffy Lube Securities Litigation*, 927 F.2d at 159. In considering the adequacy of a proposed settlement, the Court must analyze:

> (1) the relative strength of Plaintiff's case on the merits; (2) the existence of any difficulties of proof or strong defenses Plaintiff is likely to encounter if the case proceeds to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of defendant and likelihood of recovery of a litigated judgement; and (5) the degree of opposition to the settlement.

*In re Jiffy Lube Securities Litigation*, 927 F.2d at 159.

### B. Discussion

This Court finds that the parties' proposed class action settlement merits final approval. Both Plaintiffs' and Defendant's counsel are experienced in complex litigation. Settlement was reached following years of deliberation between the parties, during which DHHR proposed and implemented numerous new policies and procedures. The proposed settlement is the product of well-informed, serious, and non-collusive negotiations, to which both parties dedicated significant time and energy.

Furthermore, the settlement treats class members equitably relative to one another. The resolution contemplated in the settlement seeks to provide reasonable accommodations for all class members, whether they were aware of the action or not. The settlement additionally does not bind class members or prevent them from bringing their own causes of action related to any specific, individual injuries, making the settlement particularly valuable to Class Members "who, but for the settlement, would likely be unaware of the existence of their legal claims." *Adkins*, 2022 WL 327739 at 3. On the other hand, taking this matter to trial could have resulted in potential years of additional litigation, assuming the non-prevailing party would have appealed the outcome of the trial, and diverting the parties' time and energy away from their shared goal of providing

reasonable accommodations to all recipients of West Virginia Department of Health and Human Resources programs with disabilities, who need accommodations in order to receive those benefits.

### III.    APPROVAL OF ATTORNEY FEES

The parties have also jointly moved for approval of attorney fees as part of the settlement. As discussed above, the settlement contemplates a total payment of $50,000, to compensate class counsel for costs and fees incurred over nearly three years of litigation and protracted settlement discussions. As set forth in the joint motion, this amount compensates Plaintiffs' counsel for approximately two-thirds of the fees and costs actually incurred in the litigation.

In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement. Fed. R. Civ. P. 23(h). Congress has enacted statutes expressly allowing prevailing plaintiffs to recover attorney fees from governmental actors for violations of civil rights, including the right to be free of discrimination granted by the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1974. *See* 29 U.S.C. § 794a. Such statutes are designed to furnish legal remedies that vindicate the economic or social rights of individuals who might not otherwise be able to afford the costs of litigation. *See, e.g.*, the legislative history of the Civil Rights Attorney's Fees Awards Act of 1976, S. Rep. 94-1011, at 2 (1976), reprinted in 1976 *U.S.C.C.A.N.* 5908 (expressing Congress' understanding that the federal civil rights laws depend heavily upon private enforcement, and fee awards are an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies of these laws).

Courts have routinely held that attorney fees awarded under § 1988 and similar statutes should be "governed by the same standards which prevail in other types of equally complex Federal litigation . . . and not be reduced because the rights involved may be nonpecuniary in

nature." *Id.* at 6. The fees should be "adequate to attract competent counsel" and in computing the fee, "counsel for prevailing parties should be paid, as is traditional with attorneys compensated by a fee-paying client, 'for all time reasonably expended on a matter.'" *Id.*

The Court finds that consideration of all factors above supports the attorney fee award contemplated in the settlement.

## IV.    <u>CONCLUSION</u>

Accordingly, the Court **GRANTS** the parties' joint motion for final approval of the class action settlement (Dkt. 47). The Court further **GRANTS** the parties' joint motion for approval of attorney fees (Dkt. 48), and directs DHHR to tender the fees to Mountain State Justice within 120 days of entry of this Order.

All outstanding issues having been resolved, the Court further **ORDERS** that the above captioned action be **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: January 9, 2023

_____
THOMAS E. JOHNSTON, CHIEF JUDGE

Agreed to by:

*/s/ Lydia C. Milnes*_____
Lydia C. Milnes (State Bar No. 10598)
Bren J. Pomponio (State Bar No. 7774)
Gary M. Smith (State Bar No. 12602)

9

Mountain State Justice, Inc.
1029 University Ave., Suite 101
Morgantown, WV 26505
Phone: (304) 326-0188
lydia@msjlaw.org
*Counsel for Plaintiff Class*


*/s/ Steven Compton*
Steven Compton (WVSB #6562)
Deputy Attorney General
812 Quarrier Street, 6th Floor
Charleston, WV 25301
Phone: (304) 558-2131
Facsimile: (304) 558-4509
Steven.r.compton@wvago.gov
*Counsel for Defendants*